SCHMITT & BROTHER COMPANY V. JEREMIAH MAHONEY ET AL.

FILED MARCH 21, 1900. No. 9,093.

1. **Idem Sonans.** The names "Schmitt & Brother Co." and "Schmidt & Brother Co." are *idem sonans.*

2. **Civil Code:** ABATEMENT AND REVIVOR. The provisions of the Code of Civil Procedure relative to abatement and revivor of actions are applicable to causes brought to this court.

3. **Statute:** DISSOLUTION OF CORPORATION DOES NOT ABATE ACTION. Under section 63, chapter 16, Compiled Statutes, a suit does not abate by the dissolution of a corporation plaintiff or defendant organized under the laws of this state.

4. **Domestic Corporation:** PROSECUTION IN CORPORATE NAME AFTER DISSOLUTION. A dissolved domestic corporation may, after such dissolution, prosecute any suit in its corporate name in the same manner and with like effect as if the corporation had not ceased to exist.

5. **Foreign Statute:** PRESUMPTION. In the absence of proof, the laws of a sister state will be presumed to be the same as those of this state.

6. **Comity of States:** SUIT BY FOREIGN CORPORATION. By comity of the states, corporations of one state may sue in the courts of another state, the same as can a domestic corporation, unless prohibited by legislative enactment.

7. **Replevin:** GENERAL DENIAL: PROOF. In a replevin under an answer consisting of a general denial, the defendant may prove any matter which is a defense to the cause of action of plaintiff, as that the defendant has a special interest in and right to the immediate possession of the property by virtue of a chattel mortgage.

8. **Value Not at Issue.** In replevin, where the value of the property is stated in the petition and admitted by the answer, the question of value is not open to proof.

9. **Instructions.** Instructions must be considered together.

10. **General Ownership: FINDING.** A finding in replevin of a general ownership in the defendant is not sustained by proof, of a special interest in the property.

11. **Motion for New Trial: REVIEW: ATTENTION OF TRIAL COURT.** To review alleged errors in refusing instructions, they must be called to the attention of the trial court by a motion for a new trial.

ERROR to the district court for Dawes county. Tried below before WESTOVER, J. *Reversed.*

*Albert W. Critcs,* for plaintiff in error, against plea in abatement, cited: Civil Code, secs. 456-470; Compiled Statutes, ch. 16, secs. 62-70; Bates' Ohio Statutes, sec. 5679 *et seq.;* Bates, Pl. & Pr., 223.

*Allen G. Fisher, contra,* said that no pleading of any nature to the plea in abatement had been served or filed, and the facts stood admitted. Counsel cited: Compiled Statutes, ch. 16, sec. 67; 5 Thompson, Corporations, sec. 6754; 3 Ency. Pl. & Pr., 96; *Verein v. Funck,* 18 Ia., 473.

NORVAL, C. J.

This was an action of replevin, and the plaintiff, being unsuccessful on the trial in the court below, prosecuted error proceedings. The defendant Record filed a cross-petition in error, and subsequently a plea in abatement, setting up in said plea, in effect, that plaintiff, an Ohio corporation, was dissolved on March 6, 1895, by the judgment of the superior court of Cincinnati; that it appointed a receiver of the assets of said corporation, who subsequently made a final report of his doings, which was approved and confirmed by the court, and the receiver discharged. An authenticated copy of the said judgment and proceedings of the superior court of Cincinnati is attached to the plea in abatement and made a part thereof.

The plaintiff insists that there is no record of its dis-

solution by the order or judgment of any court, and that
the transcript of the record appended to the plea in
abatement and exhibited therewith, does not, in terms or
in fact, adjudicate the dissolution of the plaintiff, but
purports to dissolve another and different corporation.
This contention is predicated on the single fact that in
the record of the proceedings of the Ohio court, the cor-
poration dissolved is described as "Schmidt & Brother
Co." whilst plaintiffs' name is designated in some of the
pleadings and proceedings in the case at bar as "Schmitt
& Brother Co." This argument is not convincing. Plain-
tiff's name is spelled in different ways in the record be-
fore us. In the petition in the court below, the petition
in error and motion for a new trial, as well as at some
places in the journal entries, the name appears as
"Schmitt & Bro. Co.," while in one of the answers
filed, and at one place in the journal of the pro-
ceedings in the district court, the name is spelled pre-
cisely as in the record of the Ohio court; and in the in-
structions of the court plaintiff is designated as "The
Smith Brothers Company." It is obvious that the names
"Schmidt & Brother Co." and "Schmitt & Brother Co."
are *idem sonans*. *Rupert v. Penner*, 35 Nebr., 598; *Carrall
v. State*, 53 Nebr., 431; *Kinney v. Harrett*, 8 N. W. Rep.
[Mich.], 708; *People v. Gosch*, 82 Mich., 22. It follows that
the undisputed evidence discloses that plaintiff is a dis-
solved corporation and that such dissolution has existed
for more than two years. The question presented is
whether this action abated or can be further prosecuted.
Sections 463, 467 and 468 of the Code of Civil Procedure
follow:

"Sec. 463. Upon the death of the plaintiff in an action,
it may be revived in the names of his representatives,
to whom his right has passed. Where his right has
passed to his personal representative, the revivor shall
be in his name; where it has passed to his heirs or de-
visees, who could support the action if brought anew,
the revivor may be in their names.

"Sec. 467. An order to revive an action in the names of the representatives or successors of a plaintiff, may be made forthwith, but shall not be made without the consent of the defendant, after the expiration of one year from the time the order might have been first made; but where the defendant shall also have died, or his powers have ceased in the meantime, the order of revivor on both sides may be made in the period limited in the last section.

"Sec. 468. When it appears to the court by affidavit that either party to an action has been dead, or, where a party sues or is sued as a personal representative, that his powers have ceased for a period so long that the action cannot be revived in the names of his representatives or successors, without the consent of both parties, it shall order the action to be stricken from the docket."

The provisions of the foregoing sections are urged upon our attention by the defendant in support of his plea in abatement, his contention being that the plaintiff having ceased to exist as a corporation more than a year since, there can be no revivor without the consent of the defendant, and the action must be dismissed or stricken from the docket. Counsel for plaintiff, on the other hand, insists that the sections of the Code of Civil Procedure quoted are applicable to actions pending in *nisi prius* courts only, and do not relate in any manner to causes pending in this court on error or appeal. We are unable to appreciate the force of this argument. Unquestionably, the provisions of the Code of Civil Procedure are applicable to the revivor of actions in the supreme court, and this court has so treated them. *Bell v. Walker*, 54 Nebr., 222. This is not one of those actions which abate by the death of a party. Code of Civil Procedure, sec. 454 *et seq.* If there were no other statutory provisions in this state on the subject other than those to which reference has already been made, we would incline to the position that the action should have been revived and prosecuted by the stockholders of the plain-

tiff corporation within the period designated in section 466 of said Code, and that a revivor could not be had after that time without the consent of the defendant.

Counsel for plaintiff invoked certain sections of chapter 16, Compiled Statutes, entitled "Corporations," to which consideration will now be given.

Section 63 declares: "No suit or action, either at law or in chancery, pending in any court in favor of or against any banking or other corporation, shall be discontinued or abate by the dissolution of such corporation, whether such dissolution occur by the expiration of its charter or otherwise; but all such suits or actions may, in all courts of justice, be prosecuted by the creditors, assigns, receivers, or trustees, having the legal charge of the assets of such dissolved corporation, to final judgment or decree, in the corporate name of such dissolved corporation."

Section 67 of the same chapter provides: "Any corporation created by this chapter may, at any time after its dissolution, whether such dissolution occur by the expiration of its charter or otherwise, prosecute any suit at law or in equity, in and by the corporate name of such dissolved corporation, for the use of the party entitled to receive the proceeds of any such suit, upon any and all causes of action accrued, or which, but for such dissolution, would have accrued in favor of such corporation, in the same manner and with the like effect as if such corporation were not dissolved."

Section 70 reads: "Writs of error upon judgments at law may be sued out, and bills of review in chancery may be exhibited, in favor of or against any such dissolved corporation, and by its corporate name in the same manner and with the like effect as if such corporation were not dissolved, and process thereon against any such dissolved corporation shall be served in the manner prescribed in this subdivision."

This legislation confers ample authority upon every dissolved corporation to prosecute suits in its corporate

name as though the corporation had never been dissolved. The purpose and objects of the sections were to save every corporate right and power to defunct corporations, that the interests of its former stockholders as well as those of its creditors might be preserved. And the sections in question, being special provisions in regard to a particular subject, control any and all general powers. This is a familiar rule. *State v. Cornell*, 54 Nebr., 72.

It is true that the sections copied above from chapter 16, Compiled Statutes, were enacted with special reference to domestic corporations or those organized under the laws of this state, which should become dissolved. But, in the absence of evidence on the subject, the presumption must be indulged that there exists in the state of Ohio statutory provisions the same as those found in the sections quoted from chapter 16, Compiled Statutes. *Haggin v. Haggin*, 35 Nebr., 375; *Stark v. Olsen*, 44 Nebr., 646; *Chapman v. Brewer*, 43 Nebr., 890; *Scroggin v. McClelland*, 37 Nebr., 644; *Smith v. Mason*, 44 Nebr., 610; Bates' Annotated Ohio Statutes, secs. 5679-5686; *Tiffin v. Stoehr*, 54 Ohio St., 157. Therefore, the plaintiff, though dissolved, had the right to maintain this action, had it been brought in the state in which it received its corporate existence; and we have no legislative enactment which forbids a dissolved foreign corporation from suing in the courts of this state. By comity existing between the states, corporations of one state are permitted to transact business in another state, and it has been held that comity of suit as well as comity of contract exists in the several states unless denied by statute. *Bank of Augusta v. Earle*, 13 Pet. [U. S.], 517. We are constrained to hold that the suit is properly prosecuted in the name of the dissolved corporation and that the plea in abatement is not well taken. *Wehn v. Fall*, 55 Nebr., 547; *Lemmon v. People*, 20 N. Y., 562; *Glenn v. Liggett*, 135 U. S., 533; *Tiffin v. Stoehr, supra.*

The property in question consisted of saloon furniture purchased of plaintiff by the defendant Jeremiah

Mahoney, on credit, and the former insists that it was induced to make the sale by reason of certain false representations made by the latter as to his financial condition and responsibility. Mahoney executed to the defendant, the Chadron Banking Company, a mortgage on this property to secure a pre-existing debt, the mortgagee claiming and insisting that, as a part consideration for the giving of the mortgage, it released other security by it held. Plaintiff tendered to Mahoney $190, the amount paid by the latter on the purchase price, and attempted to rescind the sale. Demand was made for the property by plaintiff, which was refused, and thereupon this action was instituted against Mahoney, the bank, one Martin, and Rubel Bros. & Co. Augustine A. Record, as receiver of the bank, was permitted to appear and answer. The answers were general denials only. The John Skillito Company intervened, asserting the right of possession to a portion of the property by reason of a chattel mortgage thereon. The chattels were seized under the writ, and possession thereof delivered to plaintiff. The jury returned a general verdict finding "that the right of property and the right of possession of said property at the commencement of this action was in the defendant, the Chadron Banking Company, and we assess the value of said property and possession at the sum of $1,312, and that the said right of property has passed into defendant, Augustine A. Record, as receiver of the Chadron Banking Company, who now owns said right of property and right of possession. We also assess the damages sustained by him by reason of the detention of said property at the sum of five cents."

Upon the trial, the Chadron Banking Company was allowed to prove a special interest in the property arising by virtue of a note, and a chattel mortgage given by Mahoney to secure the payment thereof. It is strenuously argued by counsel for plaintiff that such evidence was inadmissible under an answer consisting of a general denial, and that any special interest which the bank had

in the property should have been specially pleaded. This doctrine we can not adopt. This court has frequently decided that under a general denial in replevin the defendant may prove any special matter which would defeat plaintiff's right to maintain the action. *Richardson v. Steele,* 9 Nebr., 483; *Cool v. Roche,* 15 Nebr., 24; *Burlington & M. R. R. Co. v. Young Bear,* 17 Nebr., 668; *Blue Valley Bank v. Bane,* 20 Nebr., 294; *Merrill v. Wedgwood,* 25 Nebr., 283; *Best v. Stewart,* 48 Nebr., 859; *Johnston v. Milwaukee & Wyoming Inv. Co.,* 49 Nebr., 68; *Horkey v. Kendall,* 53 Nebr., 522. It was, therefore, competent for the bank to prove a special interest in the property by virtue of a chattel mortgage and its right to immediate possession thereunder, as it tended to establish that the property was not wrongfully detained by said defendant when the suit was instituted, and that plaintiff was not then entitled to the immediate possession of the chattels. A different rule obtains in the case of an intervener who claims the right to the property, since he is, to all intents and purposes, a plaintiff disputing the right of both the original parties to the suit to the replevied property, and seeking an affirmative judgment, and must plead facts showing his right of possession to the goods.

Complaint is made of the 4th and 14th paragraphs of the instructions, which were to the effect that in case the jury found for the defendant, they should state in their verdict the value of the property to be $1,312, which sum was alleged in the petition to be the value of the goods and such allegations admitted by the answer to be true. These instructions were entirely proper, since the pleadings admitted said sum to be the value. The defendant was, therefore, by such admission, relieved from the necessity of introducing proof relative to value.

By instruction No. 7 the jury were told that if they found the property in controversy was obtained from plaintiff by reason of certain false representations of the defendant Mahoney, then the jury should find in favor of the former, and against the latter. The objection to

this direction of the court is that it left the jury in the dark as to what fact or facts would justify a finding in favor of the other defendants. And so it did, but the jury were fully and fairly advised on that subject by other paragraphs of the charge of the court, which was sufficient. The rule is that instructions must be considered as an entirety.

It is insisted that the evidence fails to sustain the verdict for the reason, among others, that not a particle of proof was adduced by the bank to show that it was the general owner of the property. This contention is absolutely sound. The evidence on behalf of the defense tends to show that the bank had a special interest in the property, yet the jury did not so find, nor did they determine the value of any special ownership, but found that the absolute right of property at the commencement of the action was in the bank, and assessed the value thereof. This court has ruled that proof of special interest in chattels will not sustain an allegation of general ownership, and, by a parity of reasoning, a finding of general ownership of chattels is not sustained by evidence of special interest therein. For the reason stated the verdict finds no support in the evidence, and the judgment must be reversed.

The cross-petition in error contains two assignments: First, the court erred in refusing the instruction requested by defendant. Second, there was error in not awarding defendant interest. These grounds are unavailing, since the defendant presented to the district court no motion for a new trial. The judgment is

REVERSED.